UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEMAJIO JEROME ELLIS,

      Plaintiff,

         v.                         CAUSE NO. 3:26-CV-279-GSL-APR

MAULK, et al.,

      Defendants.

OPINION AND ORDER

Demajio Jerome Ellis, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 2.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Ellis is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Ellis is an inmate at Miami Correctional Facility (MCF). He claims that in late February and early March 2026, Officer Maulk, Officer Bratten, and Officer Holstein (first names unknown) called him a snitch in front of other inmates with the intention of

putting him in danger. He claims this was done in retaliation for prior grievances and lawsuits he filed. He further claims that in early March 2026, Officer Maulk used excessive force by pulling his arm through the cuff port for no legitimate reason. He further claims that Sergeant McKirbbin (first name unknown) and Nurse Dean Taylor denied him medical care after this incident. Based on these events, he sues the above individuals and Warden Brian English, seeking six million dollars in damages and other relief.

Under the Eighth Amendment, inmates cannot be subjected to excessive force. The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (citation and internal quotation marks omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* While de minimis uses of force are not actionable, "a prisoner need not suffer 'serious injury' in order to bring an Eighth Amendment claim." *Id.* at 890-91 (citation omitted).

Here, Ellis claims Officer Maulk forcefully yanked his arm through a small slot in his cell for no legitimate reason. The officer's actions allegedly caused more than de minimis injury, as Ellis claims his arm was scraped and painful after this incident. Accepting his allegations as true, which the court must at this stage, he has alleged enough to proceed further against Officer Maulk on an excessive force claim.

2

He also sues Officer Maulk, Sergeant McKirbbin, and Nurse Taylor for the denial of medical care. To assert a violation of the Eighth Amendment, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, the inmate must demonstrate "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. In plain terms, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

The court cannot plausibly infer from Ellis' allegations that these defendants committed an Eighth Amendment violation. On the first prong, he alleges that he had some "scraped" skin and felt a "stinging" sensation when his arm was pulled through the cuff port. While the injury appears more than de minimis, it cannot be plausibly inferred that these symptoms did not resolve on their own. Additionally, he states in vague terms that the defendants either denied or "delayed" care after this incident. It is unclear whether care was denied or just delayed, and if he ultimately received care,

how any delay made his medical problem worse. Merely "putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

He additionally claims Officer Maulk, Officer Bratten, and Officer Holstein unlawfully retaliated against him. To state a claim under the First Amendment, a plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation and internal quotation marks omitted).

Ellis satisfies the first prong because filing a grievance or complaint qualifies as protected activity. *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020). On the second prong, being labeled a "snitch" could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015); *see also Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) (observing that "it's common knowledge that snitches face unique risks in prison"). On the final prong, he claims there was a direct link between his First Amendment activity and the threats, in that defendants told other inmates he is a snitch because they were angry about his prior grievances and lawsuits. He has alleged enough to proceed further on a First Amendment claim.

His complaint can also be read to allege that defendants' actions placed him in danger. The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). To be held liable, a defendant must have "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008).

Here, the complaint does not describe any incidents in which Ellis was actually harmed because of a specific danger posed by the defendants' statements. He alleges that their actions caused him emotional distress, but this is insufficient. 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."). While their actions may have been unprofessional, "[e]xercising poor

5

judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997).

Nevertheless, his complaint can be read to allege that he is in need of injunctive relief because of the statements the officers made to other prisoners. A claim for injunctive relief doesn't require that Ellis have already suffered an injury. *See Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002). Additionally, the Warden is responsible for ensuring that inmates within his custody receive protection from other inmates as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Ellis will be permitted to proceed on a claim for permanent injunctive relief against the Warden in his official capacity under the Eighth Amendment related to his need for protection due to allegedly being labeled a snitch.

He also sues the Warden for damages. There is no *respondeat superior* liability under 42 U.S.C. § 1983, and this high-ranking official cannot be held liable for damages solely because of his position. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Instead, to be held liable, a supervisor must have been personally involved in the constitutional violation. *Mitchell,* 895 F.3d at 498. This requirement is satisfied if the constitutional violation occurs at the supervisor's direction or with his or her knowledge or consent. *Id.* The court cannot plausibly infer from his allegations that the Warden directed, knew about, or consented to the alleged misconduct committed by his subordinates. This claim will be dismissed.

Along with his complaint, Ellis filed a motion seeking emergency injunctive relief. (ECF 4.) "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—

"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Ellis' motion requests broad relief on a variety of issues, and asks that prison staff (both parties and non-parties) be prohibited from using force against him under any circumstances; that he be transferred to the infirmary;[1] that he be allowed to have his property with him in his cell at all times; and that Officer Maulk be prohibited from working anywhere in his vicinity. (ECF 4.) The court can only grant him relief related to the claims he is proceeding on in this case, and even then, can only order a remedy that is "narrowly drawn" and uses "the least intrusive means to correct the violation of the federal right." *Westefer*, 682 F.3d at 681; *see also Rasho*, 22 F.4th at 711-13 (observing that an "injunction went well beyond the limits imposed by the PLRA," where the court

---

[1] Ellis currently has another case pending in which he sought a transfer to the infirmary based on his alleged medical needs. *Ellis v. IDOC et al.*, No. 3:25-CV-251-GSL-JEM (N.D. Ind. filed Dec. 16, 2025). The court denied his motion for a preliminary injunction after briefing. *Id.*, ECF 24. It is considered malicious for Ellis to use the in forma pauperis statute to file a lawsuit that duplicates claims contained in another pending case. *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003). The court will therefore ignore any allegations or arguments related to that issue.

"mistakenly conflated what is constitutionally adequate . . . with what is constitutionally required").

The court also must consider the Supreme Court's admonition that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). This includes matters that touch on institutional safety, such as what items Ellis can have in his cell, the use of force when necessary to restore order, and staffing matters like where to assign certain officers. The court declines to grant him relief on these issues.

Furthermore, it can be discerned from the complaint—and confirmed by filings in another pending case—that Ellis is currently in restrictive housing at MCF, where his movements and interactions with other prisoners are strictly limited. *See Ellis v. IDOC et al.*, No. 3:25-CV-251-GSL-JEM (N.D. Ind. filed Dec. 16, 2025). He does not outline any specific threat to his safety in his current housing assignment that would suggest emergency injunctive relief is warranted. Therefore, his motion will be denied at this stage. If he believes himself to be in danger, he is free to renew his motion for emergency relief, but he must limit the motion to issues he is proceeding on in this case, and must clearly explain why he needs emergency relief.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Officer Maulk (first name unknown) for monetary damages for using excessive force against him in violation of

9

the Eighth Amendment by yanking his arm through a slot in his cell for no legitimate security reason on or about March 1, 2026;

(2) GRANTS the plaintiff leave to proceed against Officer Maulk, Officer Bratten, and Officer Holstein (first names unknown) in their personal capacity for monetary damages for retaliating against him in violation of the First Amendment in February and March 2026 by telling other inmates he is a snitch due to grievances and lawsuits he filed;

(3) GRANTS the plaintiff leave to proceed against Warden Brian English in his official capacity for permanent injunctive relief under the Eighth Amendment related to his need for protection from other inmates due to allegedly being labeled a snitch;

(4) DISMISSES McKirrbin and Dean Taylor as defendants;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Maulk, Officer Bratten, Officer Holstein (first names unknown), and Warden Brian English at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(8) ORDERS Officer Maulk, Officer Bratten, Officer Holstein, and Warden English to respond, as provided for in the Federal Rules of Civil Procedure and N.D.

10

Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to

proceed in this screening order; and

(9) DENIES the plaintiff's motion for emergency injunctive relief (ECF 4) as

outlined.

SO ORDERED on March 5, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT